## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **IN THE MATTER OF THE SEARCH** | : | **Magistrate No.** |
| **OF THE PREMISES KNOWN AS** | : | |
| **102 PEABODY STREET NE** | : | |
| | : | |
| **WASHINGTON, DC 20011** | : | <u>**Under Seal**</u> |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Thomas Sullivan, of the Metropolitan Police Department (MPD), being duly sworn

under oath, do hereby depose and state:

I am currently assigned to the District of Columbia's Metropolitan Police Department's

(MPD) Youth and Family Services Division (YFSD) where my duties include the investigation

sexual and physical assaults of children and minors.  Additionally I assist in the investigations of

on-line offenses involving children, including the production, transportation, distribution, receipt

and possession of child pornography.  I have been a member of MPD in the District of Columbia

since 2009.    In 2014, I was promoted to Detective Grade 2 and am currently serving at this rank.

During my 6 year tenure with MPD, I have been assigned to the Third District Patrol Operations,

The Third District Crime Suppression Team, The Third District Vice Unit, The Intelligence Fusion

Unit, and my current assignment, the Physical and Sexual Abuse Unit at YFSD.  I have

participated in numerous training courses focusing on the investigation of sexual and physical

abuse of children during my tenure at YFSD.  Additionally I have received training in reference to

the production and possession of child pornography.  I have received this training at several

conferences and symposiums to include the International Symposium for Child Abuse in

Huntsville Alabama, The Crimes against Children Conference in Dallas, Texas, The Mid-Atlantic

Conference on Child Abuse and Neglect in Annapolis, Maryland, and an Internet Crimes against

Children Conference hosted by the National District Attorneys Association in Sterling, Virginia. I have made numerous arrests and interviewed numerous victims, witnesses, and suspects. I have participated in numerous child abuse investigations and child sex abuse investigations.

Your affiant respectfully submits this affidavit in support of an application for a warrant to search the entire premises known as 102 Peabody Street, Northeast, Washington, DC 20011 (hereinafter "PREMISES"). For the reasons set forth in the affidavit, there is probable cause to believe that instrumentalities, fruits, and evidence of a violation of Title 18, United States Code, Section 2252(a)(4)(B) (Possession of Child Pornography) are located within these premises. I am requesting authority to search the entire premises, including the residential dwelling and any computer and computer media located therein where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

## FACTS AND CIRCUMSTANCES

The statements in this affidavit are based in part on my investigation of this matter, information related to me by other law enforcement officers, and the expertise of other law enforcement officers also familiar with child pornography and child sexual exploitation investigations and cases. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of Title 18, United States Code, 2252(a)(4)(B) are presently located at 102 Peabody Street Northeast, Washington, DC 20011.

This affidavit is organized as follows: Paragraph 5 provides relevant statutory authority. Paragraph 6 provides definitions of terms used throughout the balance of this Affidavit. Paragraphs 7 through 9 provide background information concerning the use of computers and the

2

internet generally and with respect to child pornography.   Paragraphs 10 through 16 discuss the

characteristics of collectors of child pornography.   Paragraphs 17 through 28 discuss this

investigation and the factual basis for my opinion that there is probable cause to believe that

evidence of distribution of child pornography, possession of child pornography and attempted

production of child pornography is located on the PREMISES.   Paragraph 29 requests permission

to search the PREMISES.

## STATUTORY AUTHORITY

This investigation concerns alleged violations of Title 18, United States Code, Section

2252 and 2251, relating to the sexual exploitation of minors.

a.      Under 18 U.S.C. § 2252(a)(4)(b), it is a federal crime for any person to knowingly possess, or knowingly access with intent to view, 1 or more visual depictions of minors engaging in sexually explicit conduct using any means or facility of interstate or foreign commerce.

d.      Title 18, United States Code, Section 2256(2)(A) defines "sexually explicit conduct," as "actual or simulated":

(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
(ii) bestiality;
(iii) masturbation;
(iv) sadistic or masochistic abuse; or
(v) lascivious exhibition of the genitals or pubic area of any person.

c.      Title 18, United States Code, Section 2256(5) defines "visual depiction" " as including:

Undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and date which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## DEFINITIONS

The following terms have the indicated meaning in this affidavit:

a.      The term "minor," "sexually explicit conduct," and "visual depiction," as used herein, are defined as set forth in Title 18, United States Code, Section 2256.

b.      The term "child pornography," as used herein, is defined as set forth in Title 18, United States Code, Section 8, and means any visual depiction of a minor involved in "sexually explicit conduct" as that term is defined in Title 18, United States Code, Sections 2256(8)(A) and C.

c.      The term "computer," as used herein, is defined as set forth in Title 18, United States Code, Section 1030(e)(1).

d.      The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, paintings), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), cell phones, Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## USE OF COMPUTERS WITH CHILD PORNOGRAPHY

I have received training in computer crime investigation.   I also own a computer and use computers in the course of my work in law enforcement and have personal knowledge regarding the operation of computers.   Based on this training and experience, and based upon the information provided to me by other law enforcement personnel involved in this investigation, I know the following:

a.      The Internet is a global network which allows for the sharing of data across computers attached to the network.

b.      Individual users typically access the Internet through a local Internet Service Provider ("ISP") such as America On Line ("AOL") through a modem or other connection device, such as a cable or Digital Subscriber Line ("DSL").   When accessing the Internet, the ISP will assign each user an Internet Protocol ("IP") address, a unique number used by a computer to access the Internet.   IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet.   IP addresses can also be static, whereby the user's ISP assigns the computer a unique IP address, and that same number is used by the user every time the computer accesses the Internet.

c.      Communication via the Internet can take place through many different mediums like accessing a website or sending and receiving electronic mail, also known as referred to herein as "e-mail."   E-mail is an electronic form of communication which can contain letter-type correspondence and graphic images.   E-mail is similar to conventional paper type mail in that it is addressed from one individual to another.

d.      E-mail messages usually contain a header that gives the screen name, the identity of the Internet access provider, and the return address on the Internet of the individual who

originated the message or graphic.

         e.     The Internet also allows individuals to trade pictures or images, often through e-mail or by downloading images from a website or another individual's computer, as described below.

         (1)   Photographs and other images can be stored as data on a computer. This storage can be accomplished using a "scanner," which is an optical device that can recognize images or characters on paper and convert them to digital form by using specialized software.

         (2)   After the photograph or other image has been scanned into the computer, the computer stores the data from the image as an individual "file." Such a file is generally known as a "GIF" (Graphic Interchange Format) or "JPEG" (for the Joint Photographic Experts Group, which wrote the standard) file, recognizable by the ".gif" or ".jpg" file extensions (hereafter referred to as an "image file").

         (3)   Computers are capable of displaying an image file as a facsimile of the original image on a computer screen.

         (4)   Using a computer connected to a network connected to the Internet, one can transmit and receive image files between computers located in different states or countries.

         (5)   An image file itself can be either a single image (one picture only, also known as a computer file), or a multiple image file (two or more pictures, usually "zipped" or compressed using a commonly available utility and recognizable by the ".zip" file extension). Multiple image files can also be placed within an executable file (recognizable by the ".exe" file extension). When a computer runs the executable file the images can be expanded into several image files.

(6)   A computer's ability to store images in digital form makes the computer an ideal repository for child pornography.   Images can be stored internally in a computer on its "hard drive," and/or externally on "floppy" disks of several sizes and capacities, and/or externally on CDs and/or DVDs of several size and capacities and on other removable media storage devices.   A single floppy disk can store dozens of images and hundreds of pages of text.   A single CD or DVD can store hundreds of images and/or multiple videos or video clips. The storage capacities of the electronic storage media (hard drives and floppy disks) used in home computers have grown tremendously within the last several years.   Hard drives with the capacity of a hundred gigabytes are common.   These drives can store tens of thousands of images at a very high resolution.   These images can also be stored on the computers of an Internet company hosting the particular website.   A floppy disk is small portable magnetic diskette in a plastic holder used to store information.   It is sometimes referred to as "3½ Floppy (A:/)", and is also known as a data storage device connected to a computer either internally or externally. Floppy drives, tape drives and USBs drive all considered storage devices.

(7)   With a modem, a computer user can transport an image file from the Internet or from another user's computer to his own computer, so that the image file is stored in his computer.   The process of transporting an image file to one's own computer is called "downloading."   The user can then display the image file on his computer screen, and can "save" or retain the images on his computer for an indefinite time period.

(8)   In addition to permanently storing the downloaded image on his computer, the user may print the image file.   The finished product can appear as a magazine quality picture to be stored or distributed to other collectors.   The original image that was downloaded or transported is maintained in the computer.

7

(9)   With a modem, a computer user can also send an image file that is retained in his computer to another individual or to areas of the Internet where it can be accessed by many other computer users.   This process of sending an image file is called "uploading."

(10)   The process of "uploading" is similar to the "downloading" process except the user is sending the computer image file to the individual or to the Internet as a whole instead of retrieving the information from another computer.


f.      Information can be saved or stored on a computer intentionally.   For example, a person can save an e-mail as a file or can save a favorite website in a bookmark type file.   Information can also be retained unintentionally.   For example, traces of an electronic communication path can be stored automatically in temporary files or Internet Service Provider client software.   In addition to electronic communications, a computer user=s Internet activities generally leave traces or footprints in the web cache and history files of the browser used.   A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded.

g.      Another well-known component of the Internet is the World Wide Web, or the "Web."   The Web is a collection of websites located or stored on different computers throughout the world.   Each website is identified by a unique Uniform Resource Locator ("URL"), which identifies the server on which the website information is stored.   Users access websites by typing the corresponding URL into their web browser.

8

## USE OF THE INTERNET AND COMPUTERS FOR CHILD PORNOGRAPHY

Based on my training, experience and conversations with other law enforcement agents, I know that computers, computer technology and the Internet have revolutionized the way in which child pornography is produced, distributed, utilized and collected.   They have revolutionized also the way in which child pornography collectors interact with each other.   Child pornography formerly was produced using cameras and film (either still photography or movies).   The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images.   As a result, there were significant costs involved with the production of pornographic images.   To distribute these images on any scale also required significant resources. The photographs were somewhat bulky and required secure storage to prevent their exposure to the public.   The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls.   Any reimbursement would follow these same paths.

The development of computers and the Internet has added to the methods used by child pornography collectors to interact with and sexually exploit children and to produce and distribute child pornography.   Computers and the Internet generally serve four functions in connection with child pornography.   These are:   production, communication, distribution, and storage.

a.      Child pornographers now can produce both still and moving images directly from a common video camera.   The captured images can be edited in very similar ways to a photograph.   The image can be lightened, darkened, cropped, and manipulated in a wide variety of ways.   The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format.   As a result of this technology, it is relatively inexpensive and technically easy to produce, store and distribute child pornography.   Further, it is more difficult for law enforcement to detect and investigate child pornography produced with this

new technology, as opposed to methods used in the past, which required more elaborate and detectable equipment and facilities.

   b.   Previously, child pornography collectors had to rely on personal contact, United States mail, and telephonic communications in order to sell, trade or market pornography. The development of computer technology has changed that.   A modem allows any computer to connect to another computer through the use of telephone lines.   By connecting to a host computer, electronic contact can be made to numerous other computers around the world.   Once this electronic contact is established, there are numerous outlets and ways that child pornography can be distributed over the Internet.

   c.   Private and/or public Internet relay chat ("IRC") channels can be and are created for the purpose of sharing child pornography.   A user can log onto the IRC anonymously and "chat" and/or trade child pornography with other users, either on an individual or group basis. During this type of session no identifying personal information is obvious or available.   The only identifiable or traceable information is the individual's IP address or ISP.   IRC chat rooms are one place where pornographers meet to trade child related sexual and non-sexual stories and trade child pornography.   In addition, "chat rooms" on ISPs like AOL can be and are created for similar purposes.   Both types of chat rooms are places where children may be at risk of being "lured."

   d.   Aside from the chat rooms that reside on many service providers' networks, ISPs often allow access to "newsgroups."   Newsgroups resemble a bulletin board system where an individual can post messages along with graphic files on a public forum.   Any item posted in a news group can be retrieved by any other person who has access to that particular newsgroup. One commonality between a newsgroup posting and e-mail is that they each often contain a message "header" that gives information about the account that originated a particular message

and/or graphic files, and the return address to respond to the poster/sender.

      e.    Internet websites also can be used to facilitate the exchange of child pornography. A website can house child pornography directly, allowing users who access the website to view and download those images. A website can also house an "Egroup," which is a forum by which persons with shared interests in child pornography can interact in relative privacy. Typically, most Egroups will have a moderator, and membership in the group can be open or by invitation only. The members of an Egroup also typically communicate with each other by sending an e-mail to the group, which is disseminated to all of the members. In addition, each Egroup typically has a web page that the group's members can visit to view archived postings. E-mail messages and postings might include files that contain visual depictions and digital video clips.

      f.    These communication structures are ideal for the child pornography collector. The open and anonymous communication allows the user to locate others of similar inclination and still maintain anonymity. Once contact has been established, it is possible to send text messages and graphic images to others. Moreover, the child pornography collector need not use the large service providers. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages are well known and are the foundation of transactions between child pornography collectors.

11

g.    The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution of child pornography.   For example, child pornography can be transferred (via electronic mail, through file transfer protocols ("FTPs")[1] , or via newsgroup postings) to anyone with access to a computer and modem.   Because of the proliferation of commercial services that provide electronic mail service, chat services, and easy access to the Internet, the computer is a preferred method of distribution of child pornographic materials.

h.    The computer's capability to store images in digital form makes it an ideal repository for pornography.   A single floppy disk can store dozens of images and hundreds of pages of text.   The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years.   Hard drives with the capacity of 100 gigabytes are not uncommon.   These drives can store thousands of images at very high resolution.   Further, magnetic storage located in host computers allows child pornographers to hide pornographic images from law enforcement.   It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and to save that image to storage on a host computer in another country.   Only careful laboratory examination of electronic storage devices can recreate the evidence trail.

---

[1]     An FTP is a protocol that defines how to transfer files from one computer to another.   One use, known as "anonymous FTP," allows users who do not have a login name or password to access certain files from another computer, and copy those files to their own computer.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

Based on my training and experience and conversations that I have had with other federal agents and law enforcement officers, I know that child pornography is not readily available in retail establishments. Accordingly, individuals who wish to obtain child pornography do so usually by ordering it from abroad or by discreet contact, including through the use of the Internet, with other individuals who have it available or by accessing web sites containing child pornography. Child pornography collectors often send and receive electronic mail conversing with other collectors in order to solicit and receive child pornography.

I know that child pornography collectors usually maintain and possess their materials (computer images, pictures, films, magazines, videotapes, correspondence, source information, etc.) in a private secure location such as their home, office, or work space. Images or videos taken off of the Internet are often stored in the hard drive of the computer or on diskettes kept in private locations near the computer such as in locked desks, shelves, contiguous work space, filing cabinets or similar items and areas in office space. These images also can be printed on computer printers and maintained by child pornography collectors in paper form. Additionally, child pornography collectors often transfer those images to videotape, either by videotaping with a handheld video camera the images or videos on a computer screen, or by connecting a video cassette recorder to the computer and recording the images or videos directly.

Collectors of child pornography typically retain their materials and related information for many years. Most collectors of child pornography seek to increase the size of their collections in a manner similar to collectors of coins, stamps, or rare books. Many retain these materials, including information regarding sources, for their entire adult lives. Moreover, individuals who distribute and/or collect child pornography generally prefer not to be without their child

pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. In addition, collectors of child pornography rarely destroy correspondence from other collectors or distributors unless their activities are uncovered by law enforcement authorities or others.

Even if a collector of child pornography images attempts to delete images from his computer, however, for example, by moving them to the "Recycle Bin" of a computer, those images usually remain intact on the hard drive of a computer, often for a long period of time, because information on a hard drive is not destroyed until it is physically overwritten with other data or erased from the hard drive. As a result, even when a computer user thinks he or she has deleted data, in reality it usually remains on the computer and is recoverable.

Accordingly, information in support of probable cause in child pornography cases is less likely to be stale because collectors and traders of child pornography are known to store and retain their collections for extended periods of time, usually in their home. Indeed, as noted above, based on my experience with child pornography search warrants, I know that even where information about a suspect's use of child pornography is not current, we typically find child pornography at the location of the search, assuming the suspect still resides there.

Additionally, based on my experience and training, I know that persons who collect and distribute child pornography:

a. Frequently collect sexually explicit materials in a variety of media, such as photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media that they use for their own sexual arousal and gratification. Further, they commonly use this type of sexually explicit material to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, and to demonstrate the desired sexual acts.

14

b.      Frequently receive sexual gratification, stimulation, and satisfaction from actual physical contact with children and/or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (in person, in photographs, or other visual media) or from literature describing such activity.

c.      Often correspond and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, telephone numbers and screen names of individuals with whom they have been in contact and who share the same interests in child pornography.

d.      Often prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

e.      Purchase access to paid websites or other commercial sources of child pornography and they frequently maintain the financial records of those transactions at their residences.

Based on my training and experience and my conversations with law enforcement agents, I have also learned that:

a.      Child pornography is a permanent record of the sexual abuse of a child victim.  Each time child pornography is reproduced, downloaded, or forwarded by an Internet user, the victimization of the minor appearing in the pornography is perpetuated.  Such items also are important evidence and indications of an individual whose sexual objects are children, and of that individual's motive, intent, and predisposition to violate federal law related to the production,

possession and distribution of child pornography.   Additionally, these items lead to the identification of child victims and other individuals engaging in similar conduct.

b.      Child pornography collectors reinforce their fantasies, often by taking progressive, overt steps aimed at turning the fantasy into reality in some or all of the following ways:  collecting and organizing their child-related material; masturbating while viewing the child pornography; engaging children, online and elsewhere, in conversations, sometimes sexually explicit conversations, to fuel and fortify the fantasy; interacting, both directly and indirectly, with other like-minded adults through membership in organizations catering to their sexual preference for children thereby providing a sense of acceptance and validation within a community; gravitating to employment, activities and/or relationships which provide access or proximity to children; and frequently persisting in the criminal conduct even when they have reason to believe the conduct has come to the attention of law enforcement.   These are need-driven behaviors to which the offender is willing to devote considerable time, money, and energy in spite of risks and against self-interest.   The "collection" is the best indicator that law enforcement has of what the collector *wants* to do, not necessarily what he has done or will do.   The overriding motivation for the collection of child pornography may be to define, fuel, and validate the collectors' most cherished sexual fantasies involving children.

## THE INVESTIGATION

On Tuesday, June 16, 2015, at approximately 2005 hours, an individual who would later be identified as Erwin Dubose Jr. was stopped in the 800 block of Crittenden Street Northwest, in Washington, D.C. by members of MPD.   Erwin Dubose Jr. was found to be in possession of a firearm and approximately sixteen grams of a cocaine base.   Erwin Dubose Jr. was arrested and charged, "Possession with Intent to Distribute Crack-Cocaine while armed."

16

On Friday, June 26, 2015, at approximately 1900 hours, members of MPD executed a District of Columbia Superior Court Search Warrant (2015CRW2115) at 102 Peabody Street Northwest, Washington, DC 20011 in regards to the arrest of Erwin Dubose Jr. At the time of the search Erwin Dubose Jr. and his parents, Yvonne Dubose, and Erwin Dubose Sr. were present in the home. During the execution of the search warrant, members located a black in color Apple IPhone 5 (Serial #99000Z750152561), a black in color Samsung Galaxy (Serial #A3L5PHL720T), and a blue in color Dell Laptop (Serial #275532915) within Erwin Dubose Jr.'s bedroom. All of the electronics were seized as evidence, and held pending search warrants. Your affiant was advised by members involved in the search of the residence that the scope of the search of the residence was limited to Erwin Dubose Jr.'s bedroom.

Your affiant was provided with the paperwork generated from the execution of D.C. Superior Court Search Warrant #2015CRW2115. Your affiant found that several crime scene photographs were taken during the search of the PREMISES, and your affiant was able to identify what appeared to be a laptop in a loft room of the PREMISES, and other electronics throughout the home that were not seized by the MPD members.

On June 18, 2015, three District of Columbia Superior Court Search Warrants were issued for the above electronics. 2015CRW2115 was issued in reference to the black in color Dell Laptop, 2015CNC 1316 was issued in reference to the black in color Samsung Galaxy, and 15CNC1307 was issued in reference to the black in color Apple IPhone. The Dell Laptop was turned over to a member of the United States Attorney's Office (USAO) Criminal Investigation Unit for a forensic examination, and the two cellular phones were turned over to the MPD's Electronic Surveillance Unit (ESU) for forensic searches.

On July 7, 2015, Yvonne Dubose, the mother of Erwin Dubose Jr. contacted a supervisor assigned to the MPD's Fourth District.   Yvonne Dubose requested to know the status of the seized electronics which were seized from her home.   A member of MPD contacted Yvonne Dubose and advised her that the electronics were still being held as evidence.   Yvonne Dubose then advised the member that the black in color Samsung Galaxy and the blue in color Dell laptop belonged to her husband and father of Erwin Dubose Jr.   Yvonne Dubose identified her husband as Erwin Dubose.

On August 26, 2015, the forensic examination of the black in color Samsung Galaxy was concluded and a report was turned over to a member of MPD.   On August 27, 2015, a member reviewed the report and found numerous "selfies" of an individual who the officer identified as Erwin Dubose Sr.   Additionally the officer located three images which he believed to be child pornography from the media files of the Samsung Galaxy recovered from 102 Peabody Street Northeast, Washington, D.C. 20011.

Your affiant found that three images of suspected child pornography had been located within the Samsung Galaxy's photograph files.   Your affiant found that the first image depicted a prepubescent female lying naked on a bed with her bare vagina facing a camera.   An adult male is also visible in the image with his right hand on the female's stomach, and his erect penis exposed. The second image shows an image of a nude prepubescent female on her knees below a nude adult male with the adult male's penis penetrating her mouth.   The prepubescent female's vagina is exposed in this photograph.   The third image shows a young female grasping an erect penis with both hands, and placing the penis in her open mouth.

18

Your affiant was able to review several messages sent from the owner of the phone, Erwin Dubose Sr., to two individuals that your affiant believes to be his wife and son.   Your affiant found a phone number of (202) 486-4104 which was saved in the phone as "YaVonne", and a phone number of (240) 855-8813 which was saved as "Erwin."   Your affiant conducted a records check of both phone numbers and found that (202) 486-4104 was found to belong to Yavonne Dubose of 102 Peabody Street Northeast, Washington, D.C., and the phone number of (240) 855-8813 was found to belong to Erwin Dubose Jr. of 102 Peabody Street Northeast, Washington, D.C.

Your affiant found that Erwin Dubose Sr. communicated with Yvonne Dubose in reference to different household tasks and household bills to include the below message which was sent on June 20, 2015 at approximately 8:37 pm,

> *"Hello ---please take bags at back door of paper goods for repass to churchgo*
> *through white double doors to office ask for Frank and be done! Told him*
> *we would be there by 3!!!had to get to job to print!!!! Be back as soon as*
> *done!"*

Additionally your affiant located several messages from Erwin Dubose Sr. to his son Erwin Dubose Jr. asking if would eat dinner, and asking him to work on household task to include the below exchange which was sent on June 20, 2015,

> *Erwin Dubose Sr. sent at 8:53 pm: "Turn the back porch light out."*
> *Erwin Dubose Sr. received from son at 8:53 pm: "I'm out back i will turn it off when I come in"*

Your affiant also found that the owner of the cellular phone had conducted an internet search on KBB.com (Kelly Blue Book) for a trade in estimate for a 2010 Toyota Prius.   Your affiant has found that Erwin Dubose is the registered owner of a 2010 Toyota Prius which is registered in the District of Columbia.

19

Your affiant conducted several records checks of MPD databases and confirmed that Erwin

Dubose Sr. currently resides at 102 Peabody Street Northeast, in Washington, D.C. 20011, along

with Erwin Dubose Jr., and Yavonne Dubose.

Based on the facts and findings of this investigation your affiant believes that additional

child pornography will be located within the PREMISES described because the scope of the initial

search was limited to Erwin Dubose Jr.'s bedroom due to the nature of the investigation.   Your

affiant believes that a thorough search of the entire PREMISES will result in the discovery of

additional images of child pornography, and Erwin Dubose Sr.'s attempts to collect, and

potentially distribute images of child pornography.

### REQUEST TO SEARCH THE PREMISES

In light of the foregoing information, and based on my experience and training, I submit

that there is probable cause to believe that child pornography or other evidence concerning a

violation of Title 18, United States Code, Section 2252(a)(4)(B) (Possession of Child

Pornography), can be found at the PREMISES.   Specifically, any computers or computer

equipment at the PREMISES are likely to be the primary means of accessing the Internet for

purposes of distributing, collecting and/or attempting to produce child pornography and therefore

may be seized "as the means of committing [the] criminal offense" pursuant to Federal Rule of

Criminal Procedure 41(b) (3) along with data storage devices such as diskettes, thumb drives and

other devices upon which child pornography can be stored.   The evidence, fruits, and

instrumentalities of the offenses include the items described in Attachment B, attached.

Therefore, a request is made to search the entire PREMISES.

Wherefore your affiant respectfully requests that a warrant be issued authorizing the search of the

PREMISES described in Attachment A, for the items listed on Attachment B.

_____

Detective Thomas Sullivan
Youth and Family Services Division
Metropolitan Police Department


Sworn and subscribed to before me this _____ day of September 2015


_____

United States Magistrate Judge Harvey

21